

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| TEXAS EMC MANAGEMENT, LLC, | ) ) | CASE NO. 11-40008-H3-7 |
| Alleged Debtor, | ) ) | |
| IN RE | ) ) | |
| TEXAS EMC PRODUCTS, LLC, | ) ) | CASE NO. 11-40017-H3-7 |
| Alleged Debtor, | ) ) ) | |

## MEMORANDUM OPINION

The court has held an order on its "Order to Show Cause" (Docket No. 14) why this court should not abstain and dismiss the above captioned case. The following are the Findings of Fact and Conclusions of Law of the court. Separate Judgments will be entered providing for this court's abstention, and dismissing the above captioned cases. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

On November 30, 2011, VHSC Cement, LLC ("VHSC"), Daniel L. Walker,[1] and W. Tobin Wilson (collectively, the "Petitioning Creditors") filed involuntary petitions under Chapter 7 of the Bankruptcy Code against Texas EMC Management, LLC ("Management") and Texas EMC Products, Ltd. ("Products").  No order for relief has been entered in either case.

Products was formed as a limited partnership through the execution of a partnership agreement dated April 28, 2005. The partnership agreement names Management as the general partner.  The partnership agreement names Daniel L. Walker, Bonnie F. Walker, Daniel A. Walker, Kevin R. Kipp, W. Tobin Wilson and EMC Cement BV as limited partners.[2]

Walker testified that he is a limited partner of Products, and is also the president, secretary, and treasurer of Management.

Walker testified that EMC Cement BV had a technology to produce an improved concrete, but had not used that technology to produce an improved "fly ash."  Walker testified that it was his

---

[1] Certain others of the limited partners have the last name Walker.  Where "Walker" is used without a first name in this opinion, it refers to Daniel L. Walker.

[2] Although the partnership agreement lists EMC Cement BV as a limited partner, Walker throughout his testimony referred to Atle Lygren and Vladimir Ronin, persons associated with EMC Cement BV, as the other limited partners.  The court makes no finding at this time as to whether the entity or the individuals are limited partners.

idea to use the technology to try to produce an improved fly ash. He testified that Few Ready Mix Concrete ("FRMC"), an entity owned by Walker and/or his family, established a pilot plant in Jasper, Texas, using the technology.  He testified that FRMC provided to Products approximately $111,000 to operate the pilot plant, plus an additional $46,000 in loan fees.

Wilson testified that the plant began operations, and Clinton W. "Buddy" Pike was hired as Products' operation manager.

Walker testified that Products obtained a loan, in the original principal amount of $4.3 million, from Texas Capital Bank ("TCB").  He testified that, for several years, TCB received interest-only payments on the loan.  He testified that TCB began to demand payments of principal.[3]

Wilson testified that the TCB note was secured by the real property and personal property of Products, plus by the personal guarantees of Wilson and Walker.

Walker testified that Debtor was unable to make payments of principal to TCB.  He testified that he and Wilson made several payments of interest and principal to TCB.

On February 14, 2011, TCB gave notice of acceleration of the debt.  (Petitioning Creditors' Exhibit 14).  On April 12, 2011, TCB gave notice of a foreclosure sale of Products' real

---

[3] The time when such a demand was made is not in evidence.

property, to take place on May 3, 2011. (Petitioning Creditors' Exhibit 15).

Walker testified that, after TCB gave notice of foreclosure, FRMC, an entity controlled by Walker, purchased the note from TCB. He testified that, after FRMC purchased the note from TCB, FRMC completed the foreclosure of which TCB had given notice.[4] He testified that VHSC purchased the real estate of Products at the foreclosure sale. David Waxman, VHSC's vice president, testified that Pike is VHSC's president.

Wilson testified that, after FRMC foreclosed Debtor's real property and sold it to VHSC, FRMC sold the note (originally made payable by Debtor to TCB) to VHSC.

On July 18, 2011, VHSC made a demand on Products for payment of $349,547.96, asserting it was owed a deficiency after foreclosure. (Petitioning Creditors' Exhibit 21). Walker testified that, after VHSC made the demand, he caused Products to pay $170,000 to VHSC. He testified that Products has approximately $15,000 in cash, and may have some intellectual property. He testifies that neither Products nor Management have other assets. He testified that neither Products nor Management has any ongoing business operations or any employees.

---

[4] It appears that this foreclosure is the primary source of the parties' dispute.

In the involuntary petition which commenced the instant case, VHSC stated that it is owed $388,845.06. Waxman testified that the July 18, 2011 demand letter did not include accrued interest on the debt. He testified that the amount stated in the involuntary petition is correct.

In the involuntary petition, Walker stated that he is owed $495,270.36. He testified that this amount includes amounts Walker paid to TCB, plus amounts due to him as a "financial guarantee fee." Walker testified that the partnership agreement provided that when Lygren and Ronin received funds from Products, on account of their license to Products of the technology,[5] the other limited partners would become entitled to a distribution from Products. These distributions were carried on the balance sheet of Products, but were not paid.

In the involuntary petition, Wilson, an investor and limited partner of Products, stated that he is owed $1,078,642.96. Wilson testified that he loaned approximately $900,000 to Products in order to enable Products to acquire equipment. He testified that the remainder of his claim consists of repayment of amounts advanced to TCB, as well as the financial guarantee fee.

---

[5] It is not clear from the evidence whether Walker's testimony indicated Lygren and Ronin in their individual capacities, or on behalf of EMC Cement BV.

Walker testified that the only creditors of either estate are VHSC, FRMC, and the limited partners of Products (including Walker and Wilson). The parties apparently dispute whether, under the partnership agreement, the amounts purportedly owed to Walker and Wilson should be characterized as capital contributions.

Walker testified that VHSC is now operating the plant formerly operated by Debtor. Waxman testified that Pike, who is now the president of VHSC, is in charge of the day to day operations of the plant, as he was when he was employed by Products.

Walker testified that he has not communicated with Lygren or Ronin in approximately one year.

On July 8, 2011, Texas EMC, LLC[6] filed suit against Pike, in the 9th Judicial District Court of Montgomery County, Texas, asserting that VHSC is making the same product as that made by Products, that the product could not be made without use of the technology allegedly owned by Products, and that Pike's use of the technology violated provisions of the management agreement between Products and Pike. The plaintiff in that suit sought money damages, and also an injunction against Pike's use

---

[6]It is not clear whether the party has been described correctly. The facts pled in the state court petition appear to identify the work of Products.

6

and/or dissemination of Products' proprietary technology.[7] (Alleged Debtors' Exhibit 3).

Wilson testified that he had an independent reason, other than Products' alleged debt, for filing an involuntary petition. He testified that he believes Lygren was making demands and threatening litigation, purportedly on behalf of Products and/or Management, that he believes could create potential liability to him in his capacity as a limited partner of Products.

## Conclusions of Law

Section 305(a)(1) of the Bankruptcy Code provides:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
>
> > (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a)(1).

Courts determining whether the interests of creditors and the debtor would be better served by dismissal or suspension have considered the totality of the circumstances, including (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether

---

[7] The court makes no finding as to whether the technology is owned by Products, EMC Cement BV, Lygren and/or Ronin individually, or anyone else.

federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.  See In re Monitor Single Lift I, Ltd., 381 B.R. 455 (Bankr. S.D.N.Y. 2008); In re Paper I Partners, L.P., 283 B.R. 661 (Bankr.S.D.N.Y.2002)); In re Smith, 415 B.R. 222 (Bankr. N.D. Tex. 2009); In re Euro-American Lodging Corp., 357 B.R. 700 (Bankr. S.D.N.Y. 2007).

In the instant case, all of the alleged creditors are either limited partners in the alleged debtor entities, purchased assets of the debtor in foreclosure, or are affected by the state court suit.  Although each of the petitioning creditors expressed an interest in receiving a portion of the $15,000 in cash that Products listed on its balance sheet, it is clear that their reasons for the filing of the involuntary petitions have to do with obtaining leverage against the alleged debtors in the suit filed in Montgomery County, Texas, and in eliminating any potential claim to intellectual property to whose use VHSC apparently believes it is entitled.  The involuntary bankruptcy

cases do not appear to have been filed in order to reorganize debt, or to provide for an orderly disposition of assets.  Even if this court were to permit the instant cases to continue, it is likely that the questions of ownership and/or distribution of assets would be required to be resolved in litigation.  Some of the issues to be litigated are already joined in the state court litigation in Montgomery County.  The court concludes that the Alleged Debtors and the creditors are better served by dismissal of the above captioned involuntary petitions.

      Based on the foregoing, separate Judgments will be entered providing for this court's abstention, and dismissing the above captioned cases.

      Signed at Houston, Texas on February 24, 2012.

*/s/ Letitia Z. Paul*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE